**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Case No. 1:25-CR-62-3** |
| **v.** | ) | |
| | ) | |
| **Joseph Fryar** | ) | |

**DEFENDANT JOSEPH FRYAR'S MOTION TO SEVER PURSUANT TO FED. R. CRIM. P. 8(b) AND 14(a)**

Defendant Joseph T. Fryar respectfully moves, pursuant to Rules 8(b) and 14(a) of the Federal Rules of Criminal Procedure, to sever his trial from that of his seven co-defendants. Mr. Fryar is charged in only three of the twenty-six counts of the Indictment -- a single bank-fraud conspiracy and two substantive bank-fraud counts arising from two residential real-estate transactions. The remaining twenty-three counts and the vast majority of the Government's fifteen-terabyte discovery production concern an entirely separate multimillion-dollar scheme to defraud the Department of Veterans Affairs and a course of conduct by the lead defendant (identity theft, coercive control of a church, and the physical abuse of children). The bank-fraud counts and the VA-education counts are not part of the same series of acts or transactions, and their joinder in a single indictment is improper under Rule 8(b).

Even if joinder were proper, trying Mr. Fryar alongside that evidence creates a serious risk that the jury will be unable to render a reliable, individualized judgment on the three counts he actually faces, requiring severance under Rule 14(a). In the alternative, Mr. Fryar requests the protective measures described below.

## I. BACKGROUND

### A. The Indictment Charges Two Distinct Schemes and a Set of Tax Offenses.

The Indictment, returned September 4, 2025, charges eight defendants in twenty-six counts. *See* ECF Doc. 2. It alleges two separate fraud schemes and a set of individual tax offenses:

- **The bank-fraud / straw-buyer real-estate scheme (Counts One through Three).** Count One charges a conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344(2) and 1349, against Denis, Oloans, Mr. Fryar, Nostrant, Robertson, and Reip. *Id.* Counts Two and Three charge substantive bank fraud tied to the Wells Fargo loan on 801 Krebs Lane against Oloans, Mr. Fryar, Nostrant, and Reip.
- **The VA education-benefits wire-fraud scheme (Counts Four through Twenty-Three).** Count Four charges a conspiracy to commit wire fraud against Denis, Garcia, Labat, and Robertson. *Id.* Counts Five through Twenty-Three charge substantive wire fraud against Garcia and Labat. *Id.*

This scheme allegedly defrauded the VA of more than $23,500,000. Mr. Fryar is not named in any of these counts.

- **The tax offenses (Counts Twenty-Four through Twenty-Six).** These charge Denis alone with aiding and assisting the filing of false tax returns. *Id.*

Mr. Fryar is charged in three counts only. He is named nowhere in the VA education-benefits counts or the tax counts.

### B. The Charges Against Mr. Fryar Center on Two Real-Estate Transactions.

The evidence bearing on Mr. Fryar concentrates on the alleged bank-fraud/straw-buyer real-estate scheme, not the alleged seminary fraud. That evidence describes Mr. Fryar's role as a buyer, seller, or titleholder in two Hinesville-area properties: 801 Krebs Lane, where he is named as the seller to straw buyer "D.C." and 1480 Flo Zechman Drive, which he allegedly acquired and resold at a profit within 10 weeks. The balance of the Mr. Fryar-related material is corporate-formation paperwork for The Prudential Realty, LLC, a post-office-box rental, American Express statements on which he was an authorized user, and a background report that, on its face, contains no criminal record.

### C. The Evidence Touching Mr. Fryar is a Narrow Subset While Nearly All of the Rest Concerns Conduct Unrelated to Him.

The Government's discovery is vast. It has been produced on a fifteen-terabyte hard drive. As to Mr. Fryar, that production divides into two markedly unequal parts.

First, the subset of material that relates to Mr. Fryar is small, and much of even that subset involves him only incidentally. From the defense's review of the production to date, a large share of the Mr. Fryar-related records are bank and credit-card entries in which Mr. Fryar appears only in transaction lines, adding volume but little else beyond his status as an authorized user on another person's account. The substantive discovery related to him reduces to the two real-estate transactions and the corporate and post-office-box records described above.

Second, the overwhelming majority of the fifteen-terabyte production does not mention or relate to Mr. Fryar at all. It concerns a separate alleged scheme and a course of conduct by others, namely a $23.5 million alleged scheme to defraud the VA and veterans through the House of Prayer Bible Seminary, prosecuted through Counts Four through Twenty-Three against other defendants. Mr. Fryar is not charged in connection with any of this conduct.

## II. LEGAL STANDARD

Rule 8(b) permits the Government to charge two or more defendants together only where they are alleged to have "participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses," and provides that "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b). To satisfy the "same series of acts or transactions" requirement, the Government "must demonstrate that the acts alleged are united by some substantial identity of facts and/or participants." *United States v. Morales*, 868 F.2d 1562, 1569 (11th Cir. 1989). Whether joinder is proper "is to be determined before trial by examining the allegations contained in the indictment." *Id.* at 1567-68; *accord United States v. Liss*, 265 F.3d 1220, 1228 (11th Cir. 2001). "[S]eparate conspiracies with different memberships may still be joined if they are part of the same series of acts or transactions." *United States v. Weaver*, 905 F.2d 1466, 1476 (11th Cir. 1990).

Even where joinder is proper, Rule 14(a) authorizes the Court, "[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant," to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The Supreme Court has instructed that a district court should grant a severance under Rule 14 when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). That risk "is heightened" when "many defendants are tried together in a complex case and they have markedly different degrees of culpability." *Id.* In the Eleventh Circuit, a defendant seeking severance bears the burden of demonstrating that compelling prejudice would result from a joint trial, *United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011), and must show "specific and compelling prejudice against which the trial court was unable to afford protection," *United States v. Diaz*, 248 F.3d 1065, 1101 (11th Cir. 2001).

The Eleventh Circuit has identified the circumstances in which a joint trial threatens a reliable judgment. One is where "the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently." *United States v. Blankenship*, 382 F.3d 1110, 1124 (11th Cir. 2004). Another, directly applicable here, is where "one defendant is being charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants." *Id.* at 1125.

## III. ARGUMENT

### A. The Bank-Fraud Counts and the VA Education-Benefits Counts are Not Part of the Same Series of Acts or Transactions, Making Their Joinder Improper Under Rule 8(b).

The threshold defect in this prosecution is one of pleading. Rule 8(b) "is a pleading rule," and the propriety of joinder "is to be determined before trial by examining the allegations contained in the indictment." *Morales*, 868 F.2d at 1567-68; *Liss*, 265 F.3d at 1228. On the face of this Indictment, the alleged bank-fraud scheme (Counts One through Three) and the VA education-benefits wire-fraud scheme (Counts Four through Twenty-Three) are two separate conspiracies with different objects, different victims, different statutes, and largely different participants. The bank-fraud conspiracy is an alleged §§ 1344/1349 scheme to deceive mortgage lenders through straw real-estate purchases, while the separate alleged wire-fraud conspiracy is a §§ 1343/1349 scheme to deceive the VA through false education-benefit certifications.

Separate conspiracies may be joined only if they share "some substantial identity of facts and/or participants." *Morales*, 868 F.2d at 1569. That identity is absent here. As the former Fifth Circuit explained in language the Eleventh Circuit has adopted, "when . . . the connection between different groups is limited to a few individuals common to each but those individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite

substantial identity of facts or participants is not present." *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978), *quoted in Weaver*, 905 F.2d at 1477. The only threads connecting these two schemes are the overarching House of Prayer organization and the presence of Denis in both conspiracies (with Robertson charged in both conspiracy counts). The two schemes pursue no common aim: defrauding mortgage lenders of real-estate proceeds is not the same enterprise as defrauding the VA of education benefits. Mr. Fryar, charged solely in the bank-fraud counts, is precisely the defendant Rule 8(b) protects — one joined with a separate alleged scheme "in which [his] co-defendants, but [not he], were involved." *Weaver*, 905 F.2d at 1476.

### B. Even if Joinder Were Proper, Mr. Fryar is Charged with a Discrete Alleged Bank-Fraud Scheme That is Significantly Different from the VA-Education Fraud and the Abuse-and-Control Conduct that Dominate This Case.

Should the Court find joinder proper under Rule 8(b), severance is nonetheless required under Rule 14(a). This case presents the paradigm the Eleventh Circuit identified in *Blankenship* for mandatory severance: a defendant "charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants." *Blankenship*, 382 F.3d at 1125. Mr. Fryar is charged only with an alleged conspiracy to defraud mortgage lenders and two substantive bank-fraud

counts arising from two real-estate closings. *See* ECF Doc. 3 at 7, 19, 21. The center of gravity of this prosecution lies elsewhere -- in an alleged $23.5 million scheme to defraud the VA through false certifications submitted by other defendants, and in Denis's alleged identity theft, coercive control of a congregation, and abuse of children. These alleged offenses differ from Mr. Fryar's in victim, in mechanism, in time frame, and in moral gravity. The twenty-three counts Mr. Fryar does not face carry the weight of this case; the three counts he does face could be tried in a matter of days on a self-contained set of evidence.

### C. The Gross Disparity of Evidence and the Inflammatory Character of the Co-Defendant Proof Create a Serious Risk that the Jury Could Not Reliably Render An Unbiased, Individualized Judgment as to Mr. Fryar on the Three Counts He Faces.

The disparity between the Government's evidence against Mr. Fryar and the evidence against his co-defendants is extraordinary. The Government's production spans fifteen terabytes, nearly all of which neither mentions nor relates to Mr. Fryar; and even within the narrow subset that does, much consists of transaction-line entries that add no substance. Against that backdrop the jury would hear, over a lengthy multi-defendant trial, that veterans were allegedly bilked of more than $23 million, that the lead defendant allegedly physically abused children, and that the lead defendant allegedly stole an American's identity and ran a coercive organization that surveilled and punished its members. This is not a case of mere

imbalance in the quantity of proof; the jury would be asked to absorb multiple schemes, different victims, different statutes, different groups of defendants, and extremely inflammatory evidence unrelated to Mr. Fryar and his charges in a single proceeding.

The Eleventh Circuit recognizes that the presumption that juries can compartmentalize evidence “evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." *Blankenship*, 382 F.3d at 1123-24. Evidence that a co-defendant allegedly abused children and defrauded disabled veterans is the paradigm of "very prejudicial and highly inflammatory" proof whose spillover effect simply cannot be confined or cured by instruction. *Id.* at 1124.

The danger is compounded by the inherent prejudice of a mass conspiracy trial. As Justice Jackson warned, a defendant jointly tried on a conspiracy charge occupies a precarious position, for the rules of evidence in conspiracy cases make such trials "most difficult to try without prejudice to an innocent defendant," and prosecutors too often "sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders." *Krulewitch v. United States*, 336 U.S. 440, 453-54 (1949) (Jackson, J., concurring). The danger is at its height precisely because, as *Zafiro* teaches, the risk of prejudice is greatest

when "many defendants are tried together in a complex case and they have markedly different degrees of culpability." *Zafiro*, 506 U.S. at 539. Mr. Fryar sits at the opposite pole of culpability from the lead defendant. The serious risk is that the jury, having heard weeks of proof about child abuse and a $23 million fraud, will not pause to ask whether the Government has proved Mr. Fryar's knowing participation in an unrelated bank-fraud conspiracy beyond a reasonable doubt as to him alone.

### D. The Self-Contained Nature of the Alleged Bank-Fraud Evidence Confirms that a Separate Trial is Both Fair and Efficient.

Because the Government's alleged evidence of the charged bank-fraud counts is documentary and self-contained, it can be presented to a jury in a separate, far shorter trial without any need for the seminary-fraud evidence, the tax evidence, or the abuse-and-control evidence that makes the joint trial so prejudicial. Severing Mr. Fryar would not require the Government to repeat the inconvenience of presenting its real-estate proof; that proof stands on its own. The efficiency rationale for joint trials is at its weakest where, as here, the moving defendant's counts rest on a discrete documentary record that overlaps only marginally with the evidence driving the rest of the case.

### E. The Need for Severance Here Overcomes the Presumption In Favor of Joint Trials.

Mr. Fryar understands that joint trials are preferred, even more so in conspiracy cases. *Lopez*, 649 F.3d at 1234. But this case unites every aggravating factor the Eleventh Circuit has identified justifying severance: a large number of defendants, "markedly different degrees of culpability," *Zafiro*, 506 U.S. at 539, a "massive volume of evidence," *Blankenship*, 382 F.3d at 1124, and a moving defendant whose alleged crime is "significantly different from those of the other defendants," *id.* at 1125. Where those factors converge, severance is the only remedy that can protect the reliability of the verdict as to Mr. Fryar.

## IV. IN THE ALTERNATIVE, FRYAR REQUESTS PROTECTIVE MEASURES

If the Court denies severance, Mr. Fryar respectfully requests, by way of example and not limitation, that the Court implement the following measures to mitigate the risk of spillover prejudice:

- Severance of the trial of the VA education-benefits counts (Counts Four through Twenty-Three) and the tax counts (Counts Twenty-Four through Twenty-Six) from the trial of the bank-fraud counts, so that the evidence unique to those counts is not presented in Mr. Fryar's trial.
- An order directing the Government to identify, in advance of trial, the evidence and exhibits it intends to offer against Mr. Fryar and those it offers

only against co-defendants, the measure the Eleventh Circuit credited in *Diaz*, where the court "ordered the government to announce against whom the evidence was offered." *Diaz*, 248 F.3d at 1102.

- Contemporaneous and closing limiting instructions directing the jury that Mr. Fryar is not charged in Counts Four through Twenty-Six, that evidence relating to those counts may not be considered against him, that any other evidence that comes in at trial that is not related to Mr. Fryar's charges (including the inflammatory evidence outlined above) must not be considered or counted against Mr. Fryar, and that the case of each defendant and each count must be considered separately and individually. *See Lopez*, 649 F.3d at 1239-40.
- Exclusion or limitation of the most inflammatory co-defendant evidence as unfairly prejudicial, in particular the child-abuse allegations and the identity-theft and coercive-control material, to the extent its prejudicial effect as to Mr. Fryar substantially outweighs any probative value on the three counts he faces.
- A special verdict form requiring the jury to make separate, count-by-count findings as to Mr. Fryar, which the Eleventh Circuit has recognized as a signal of the jury's ability to make individualized determinations. *See Diaz*, 248 F.3d at 1101.

- Redaction of any co-defendant statements that would not be admissible against Mr. Fryar in a separate trial before those statements are offered in a joint trial.
- An order governing the order of proof and the structure of argument so that the evidence specific to the bank-fraud counts is presented discretely rather than interwoven with the seminary-fraud and abuse evidence.
- All other measures that are necessary to protect Mr. Fryar's right to a fair trial.

## V. CONCLUSION

For the foregoing reasons, Mr. Fryar respectfully requests that the Court sever his trial from that of his co-defendants because the two alleged schemes are misjoined under Rule 8(b), and independently because a joint trial would prejudice him under Rule 14(a). In the alternative, Mr. Fryar requests the protective measures set forth above. This motion is made before trial as required by Rule 12(b)(3), and Mr. Fryar reserves the right to renew it at the close of the evidence.

Respectfully submitted this the 30th day of October, 2026.

*_/s/ Holly A. Pierson_*
Holly A. Pierson
Georgia Bar No. 579655
**Pierson Law LLC**
1150 Spring Street NW, Suite 800
Atlanta, GA 30309
404.353.2316
hpierson@piersonlawllc.com

*Counsel for Defendant Joseph Fryar*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Case No. 1:25-CR-62-3** |
| **v.** | ) | |
| | ) | |
| **Joseph Fryar** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, I electronically filed the foregoing Motion to Sever with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Holly A. Pierson*
Holly A. Pierson
Georgia Bar No. 579655
**Pierson Law LLC**
1150 Spring Street NW, Suite 800
Atlanta, GA 30309
404.353.2316
hpierson@piersonlawllc.com

*Counsel for Defendant Joseph Fryar*